Filed 4/29/22  P. v. Scott CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY JAMES SCOTT,<br><br>     Defendant and Appellant. | B311829<br><br>(Los Angeles County<br> Super. Ct. No. NA098295) |

APPEAL from an order of the Superior Court of Los Angeles County.  Judith L. Meyer, Judge.  Affirmed.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Anthony James Scott appeals from the denial of his petition for resentencing pursuant to Penal Code section 1170.95.

We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant was charged by information with six felony counts: one count of murder with a robbery-murder special circumstance allegation (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)(17); count 1), two counts of first degree robbery (§§ 211, 213, subd. (a)(1)(A); counts 2 & 3), two counts of attempted first degree robbery (§§ 211, 213, subd. (a)(1)(A), 664; counts 4 & 5), and one count of illegal possession of a firearm by a convicted felon (§ 29800, subd. (a)(1); count 6). Firearm enhancements were alleged as to counts 1 through 5. (§ 12022.53, subds. (b)–(d).) It was further alleged defendant had suffered two prior strikes within the meaning of the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12) and section 667, subdivision (a)(1), and five prior state prison commitments within the meaning of section 667.5, subdivision (b).

The charges arose from a 2013 home invasion robbery. In the early morning hours of January 21, 2013, Lillian B., Ronald W., J.S., Corey H., Deon H., and Jerome W. were at Lillian's apartment. (*People v. Scott* (Apr. 27, 2018, B276990) [nonpub. opn.].) At approximately 3:00 a.m., there was a knock at the door. When Lillian opened it, two men pushed their way into the apartment. Both men had their faces covered. The first man was unarmed. The second man, wearing a dark do-rag or scarf over his face and gloves with a "Steelers" logo, waved a gun at the victims and said something to the effect that "this is a robbery" and "give it up" and instructed everyone to get on the

2

ground and take everything out of their pockets.  J.S. recalled the gunman also demanded the "pack," which, she testified, meant drugs.  (*Ibid.*)

Corey and Ronald handed the gunman money from their pockets.  After briefly cooperating, Ronald jumped up and pushed the first man against the gunman, grabbing the barrel of the gun in the process.  A struggle over the gun ensued.  During the struggle, the gun discharged once, hitting Deon in the face and killing him.  (*People v. Scott, supra*, B276990.)

After the gunshot, Corey joined the struggle to get the gun.  Ronald lost his grip on the barrel of the gun, and it ended up in Corey's possession.  Both suspects then fled the apartment.  Corey briefly gave chase to no avail.  (*People v. Scott, supra*, B276990.)

Before running after the suspects, Corey handed the gun to Lillian who threw it into the grass because she was frightened and on probation for transportation of drugs.  The gun was never recovered.  (*People v. Scott, supra*, B276990.)

Police officers located several items outside Lillian's apartment, including a clear plastic bag with red stains containing an off-white powder.  The red stains later tested positive for Corey's blood (who had been injured in the fight over the gun).  The police also found a black glove with a Steelers logo and a do-rag.  DNA testing performed on the do-rag showed defendant as the major contributor and Corey as the minor contributor.  J.S. identified the do-rag as the scarf she saw on the gunman.  (*People v. Scott, supra*, B276990.)

At trial, all witnesses testified the gunman was wearing a dark-colored do-rag when he entered the apartment.  Corey, Lillian, and J.S. all testified they did not see the gunman's face at

3

any time due to it being covered. (*People v. Scott, supra,* B276990.)

Ronald testified he had been at Lillian's apartment many times to lift weights and that he had seen defendant lifting weights at Lillian's within one week of the robbery. He said defendant was wearing a black do-rag at the time as a display of gang colors. (*People v. Scott, supra,* B276990.)

The jury found defendant guilty on all counts and found true the special circumstance allegation and the firearm use allegations. In a bifurcated proceeding, the prior conviction allegations were also found true. The court sentenced defendant to life without parole on count 1 (the murder charge), plus nine consecutive terms of 25 years to life for counts 2 through 5 and the five firearm enhancements (§ 12022.53, subd. (d)). The court imposed a determinate term of 50 years for the prior felony enhancements and stayed the prison priors. Defendant was awarded 969 days of presentence custody credits. (*People v. Scott, supra,* B276990.)

In April 2018, we affirmed defendant's conviction. Because of legislation passed while defendant's direct appeal was pending, we remanded for resentencing with directions to the superior court to reconsider the Penal Code section 667.5, subdivision (b) prior prison term enhancements, and to exercise its newly granted discretion under section 12022.53, subdivision (h), to strike, dismiss, or impose the firearms enhancements pursuant to section 12022.53, subdivisions (b), (c), and (d). (*People v. Scott, supra,* B276990.) Neither party advised this court how the trial court ruled on remand.

In October 2018, Senate Bill 1437 (2017–2018 Reg. Sess.) was passed. Penal Code section 1170.95 was enacted as part of

4

the legislative changes effected by Senate Bill 1437 and became effective January 1, 2019. (Stats. 2018, ch. 1015, § 4.)

Thereafter, defendant filed in propria persona his petition for resentencing pursuant to Penal Code section 1170.95. Defendant requested the appointment of counsel and resentencing on the grounds he was convicted of felony murder and could not now be convicted based on the amendments effected by Senate Bill 1437.

On January 12, 2021, the court summarily denied defendant's petition without appointing counsel. The court reasoned that defendant was ineligible for relief as a matter of law because defendant was found to be the shooter and Penal Code section 1170.95 did not apply to individuals whose murder convictions were based on their status as the actual killer.

This appeal followed.

We appointed appellate counsel to represent defendant. Defendant's appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) in which no issues were raised. The brief included a declaration from counsel that she reviewed the record and sent a letter to defendant explaining her evaluation of the record. Defense counsel requested we exercise our discretion to undertake *Wende* review citing, among other cases, *People v. Flores* (2020) 54 Cal.App.5th 266, 274 which held that "although it is not required under law, we think an appellate court can and should independently review the record on appeal when an indigent defendant's appointed counsel has filed a *Wende* brief in a postjudgment appeal from a summary denial of a section 1170.95 petition (regardless of whether the petitioner has filed a supplemental brief)." The Supreme Court is now considering the issue. (See *People v. Delgadillo* (Nov. 18, 2020,

5

B304441) 2020 Cal.App.Unpub.Lexis 7552, review granted Feb. 17, 2021, S266305.)  Pending guidance from the Supreme Court, we chose to exercise our discretion to review defendant's appeal.

Appointed counsel also stated she advised defendant of his right, under *Wende*, to submit a supplemental brief within 30 days, and that she forwarded copies of the record to defendant. Defendant filed a supplemental brief stating he was innocent and asserting the felony murder instructions were improper, that prospective jurors who expressed disagreement with the felony murder rule were not seated on the jury, and that questions raised during deliberations about the felony murder rule were answered only by telling the jurors to reread the felony murder instruction.  Defendant contends the court's failure to appoint counsel denied him the ability to present new evidence to the court demonstrating his lack of malice.

In January 2022, we asked the parties to submit letter briefs addressing the impact, if any, on defendant's appeal of two decisions issued after the filing of defendant's appeal:  *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*) and *People v. Mejorado* (2022) 73 Cal.App.5th 562.  Both parties submitted letter briefs. Respondent also filed a request for judicial notice of the jury instructions and verdict forms from defendant's trial.  We grant respondent's request and take judicial notice of the record of conviction.

On March 23, 2022, the Supreme Court granted review in *Mejorado,* S273159, and deferred briefing pending its resolution of *People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted March 10, 2021, S266606.

6

# DISCUSSION

While this appeal was pending, the Supreme Court issued its decision in *Lewis*, *supra*, 11 Cal.5th 952 and resolved several issues related to petitions filed pursuant to Penal Code section 1170.95. In particular, *Lewis* reaffirmed the principle that appellate opinions are a part of the record of conviction, and held they are properly considered by a trial court in making a prima facie determination under section 1170.95, subdivision (c). (*Lewis*, at p. 972.) *Lewis* cautioned the inquiry the trial court undertakes at the prima facie stage "is limited" (*id*. at p. 971) and that "the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' [Citation.] In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion' " (*id*. at p. 972).

*Lewis* nonetheless concluded that where " 'the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

*Lewis* also instructs that the failure to appoint counsel upon the filing of a facially compliant petition is "state law error only," subject to harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis*, *supra*, 11 Cal.5th at pp. 957–958, 972–973.) "[A] petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been

7

summarily denied without an evidentiary hearing." ' " (*Id*. at p. 974.)

Here, the parties agree the trial court erred in failing to appoint counsel before considering the record of conviction and making an eligibility determination against defendant. Respondent contends the error was harmless because defendant was convicted under the sole theory he was the gunman and not on any theory of vicarious liability. Defendant contends the error was prejudicial because the denial of counsel deprived him of the opportunity to demonstrate he was convicted on a theory of imputed malice.

We conclude any error in failing to appoint counsel was harmless.

The Legislature passed Senate Bill 1437 " 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*Lewis, supra,* 11 Cal.5th at p. 959.)

Senate Bill 1437 eliminated murder liability under a natural and probable consequence theory but only narrowed liability for felony murder. Penal Code section 188 now provides that "*[e]xcept as stated in subdivision (e) of Section 189* [governing felony murder], in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3), italics added.)

8

Subdivision (e) of Penal Code section 189 provides that a participant in the perpetration or attempted perpetration of a felony listed in subdivision (a), which includes robbery, in which a death occurs is liable for murder only if one of the following is proven: (1) *the person was the actual killer*; (2) the person was not the actual killer, but, with the intent to kill, aided and abetted the actual killer in the commission of murder in the first degree; *or* (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d).

Here, the record of conviction establishes that defendant was convicted under a theory of felony murder based on his status as the actual killer, a theory of murder liability that remains viable notwithstanding the amendments effected by Senate Bill 1437.

The jury made an express finding under Penal Code section 12022.53, subdivision (d) that defendant personally and intentionally discharged a firearm that resulted in Deon's death. There was no evidence that any other firearm was present or used. The jury also expressly found the death occurred during defendant's commission of a robbery. (§ 190.2, subd. (a)(17).)

The evidence demonstrated that only a single shot was fired and that it occurred when defendant was struggling with one of the victims who was attempting to wrest the gun from him. Under current law, felony murder liability may be imposed *on the actual killer* "even if the killing was unintentional, accidental, or negligent." (See, e.g., Jud. Council of Cal., Crim. Jury Insts. (2019) CALCRIM No. 540A.)

Defendant's reliance on *People v. Offley* (2020) 48 Cal.App.5th 588 (*Offley*) is unavailing. *Offley* concluded a

jury's finding that a defendant personally discharged a firearm causing death under Penal Code section 12022.53, subdivision (d) "does not establish as a matter of law that a defendant acted with malice aforethought.  It is therefore *insufficient on its own* to justify denying a defendant's petition under section 1170.95 at the first stage of review."  (*Offley*, *supra*, 48 Cal.App.5th at p. 597, italics added; see also *People v. Lucero* (2016) 246 Cal.App.4th 750, 759 [subds. (c) and (d) of § 12022.53 "refer only to the description of a particular act—discharging a firearm—without reference to the defendant's intent to achieve any additional consequence"].)

However, *Offley*, which involved five codefendant gang members shooting into a vehicle containing rivals, was *not* a felony murder case.  The court reasoned, based on the instructions there, that it could not "rule out the possibility that the jury relied on the natural and probable consequences doctrine in convicting Offley.  The trial court instructed the jury on the natural and probable consequences doctrine as part of its instruction on conspiracy liability."  (*Offley*, *supra*, 48 Cal.App.5th at p. 599.)  The court therefore concluded the record did not establish as a matter of law the defendant had acted with malice aforethought as required under the amended murder statutes.

Finally, to the extent defendant argued in his handwritten supplemental brief that errors occurred during voir dire and when the court responded to the jury during deliberations, any such errors are not cognizable in this appeal from the postjudgment ruling on the resentencing petition.  Any such errors should have been raised in defendant's direct appeal.

10

## DISPOSITION

The order denying defendant's petition for resentencing is affirmed.


GRIMES, Acting P. J.

WE CONCUR:



WILEY, J.



HARUTUNIAN, J.*

---

\*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.